**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CITIZENS SECURITIES, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. |
| | § | |
| SOTHEAVY VANN, | § | |
| | § | |
| *Defendant*. | § | |

**ORIGINAL COMPLAINT AND APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION IN AID OF
ARBITRATION**

Plaintiff Citizens Securities, Inc. ("Citizens" or "Plaintiff") files this Original Complaint and Application for Temporary Restraining Order and Preliminary Injunction in Aid of Arbitration against Defendant Sotheavy Vann ("Vann" or "Defendant"):

## I.   NATURE OF ACTION

1.   This is an action for a temporary restraining order and a preliminary injunction to maintain the status quo pending resolution of an arbitration proceeding between Citizens and Vann that is being filed concurrently with Financial Industry Regulatory Authority ("FINRA") Dispute Resolution.

2.   This dispute arises out of Vann's resignation from Citizens on June 10, 2026, and the immediate commencement of her employment with competitor firm Wells Fargo Clearing Services, LLC ("Wells Fargo").  At the time of her resignation, Vann worked as a financial advisor in both Citizens' branches in Havertown, Pennsylvania and Broomall, Pennsylvania.

3.   Since resigning from Citizens and joining Wells Fargo, Vann has used Citizens' confidential information to solicit Citizens' clients to move their accounts to work with her at

Wells Fargo.  Citizens has learned that, despite being subject to a covenant not to solicit Citizens' clients, Vann has been contacting such clients and seeking to induce them to transfer their accounts from Citizens to her at Wells Fargo. Clients have informed Citizens that Vann's communications have been more than simply announcing her change of employment, and that she is seeking to induce them to do business with her at Wells Fargo.

4.      Specifically, numerous clients have informed Citizens that Vann called them after she resigned seeking to discuss Wells Fargo and is outright asking them to transfer their accounts to her at Wells Fargo.

5.      Three clients were so upset by Vann's aggressive and bold requests for them to meet to discuss transferring their accounts to Wells Fargo that they chose to sign sworn declarations describing their solicitation by Vann.

6.      At the time of her resignation, Vann serviced 222 Citizens client households totaling around $70 million in assets which generated $422,000 in revenue over the prior twelve months. 46% of these accounts are managed and generate fees. The substantial majority, if not all, of these clients were entrusted to Vann by Citizens for management following an introduction and referral from a Citizens bank affiliate.

7.      Vann's conduct constitutes a breach of her agreements, which contain non-solicitation and confidentiality provisions. It also constitutes violations of her common law obligations to Citizens, and federal law protecting Citizens' trade secrets.

8.      To maintain the status quo and prevent continued irreparable harm arising from Vann's misconduct, Citizens seeks immediate injunctive relief in the form of a temporary restraining order and a preliminary injunction, prohibiting Vann and those working with her from soliciting Citizens' clients, and barring Vann from further using and compelling the return of

Citizens' confidential information, pending resolution of Citizens' claims against Vann in a related arbitration that is being filed today.

## II.    JURISDICTION AND VENUE

9.      This Court has jurisdiction in this action pursuant to 28 U.S.C. § 1332(a) in that, as alleged below, Plaintiff Citizens and Vann are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  This Court also has original jurisdiction over this action pursuant to the provisions of 28 U.S.C. § 1331 in that this matter is a civil action arising under the Constitution, laws, or treaties of the United States.  This action is based on 18 U.S.C. §§ 1836 *et seq.*, also known as the Defend Trade Secrets Act (the "DTSA").  Additionally, this Court has supplemental jurisdiction over Plaintiff's state law and other claims pursuant to 28 U.S.C. § 1367.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, in that a substantial part of the events giving rise to the claims occurred in Broomall, Pennsylvania and Havertown, Pennsylvania, and Vann resides in this district.

## III.    THE PARTIES

11.     Plaintiff Citizens Securities, Inc., f/k/a CCO Investment Services Corp., is a corporation incorporated under the laws of the State of Rhode Island.  Its principal place of business is in Johnston, Rhode Island.

12.     Defendant Sotheavy Vann is an individual who at all times relevant herein was employed and/or conducted business in Havertown, Pennsylvania and Broomall, Pennsylvania and is and was a citizen of the state of Pennsylvania.

13.     In connection with her status as a registered representative of Citizens, Vann executed a Form U-4 Uniform Application for Securities Industry Registration or Transfer.  By executing the Form U-4, Vann agreed to submit to FINRA arbitration disputes, claims, and

controversies arising between herself and Citizens.  FINRA Rule 13804 specifically provides Citizens with the ability to seek and obtain injunctive relief from a court of competent jurisdiction in connection with the required arbitration.

## IV.    FACTUAL ALLEGATIONS[1]

**A.    Citizens protects its trade secrets and confidential information, and the client relationships it has developed.**

14.    Citizens is a registered broker-dealer firm with FINRA, and a registered investment adviser firm with the Securities and Exchange Commission ("SEC").  Among other things, Citizens provides securities, insurance, brokerage, and investment advisory services to its clients. It is a subsidiary of Citizens Bank, N.A. ("Citizens Bank"), and many Citizens clients also maintain banking relationships with Citizens Bank.

15.    Citizens has invested substantial time and money, totaling millions of dollars, to acquire, develop, and maintain its clients and their information over a number of years.  It is with great difficulty, and only after a great expenditure of time, money and effort that Citizens was able to acquire its existing clients and their information.  Citizens spends substantial resources in gaining knowledge about its clients and is protective of the privacy of such information.  Because Citizens' clients typically have longstanding relationships with Citizens and Citizens Bank, those clients typically remain with and continue to be serviced by Citizens, regardless of whether their assigned advisor or other team members resign or leave Citizens.  But for Vann's employment with Citizens, she would not have had any contact with most, if not all, of the clients the firm assigned to her and whom she is now soliciting.

---

[1] The facts stated herein are verified by the Affidavit of Charles X. Morlock, attached as **Exhibit 1**. Mr. Morlock is a Regional Director for Citizens and had supervisory authority over Vann and her branch.  Mr. Morlock has had contact with numerous clients formerly serviced by Vann.

16.     During the course of her employment with Citizens, Vann had access to highly confidential Citizens' client files in addition to other financial information that is confidential and proprietary to Citizens. These client files contain confidential financial information regarding each client, including identity, address, telephone numbers, transactional history, tax information, personal financial data, banking information and investment objectives, among other confidential information. Vann had no interaction with most, if not all, of the clients she was assigned at Citizens (and no knowledge of any of their confidential information) until she started working at Citizens.

17.     A critical factor to Citizens' continued success is its relations with its clients. Citizens has built the loyalty of its client base through many years of effort and has invested substantially in building goodwill.  Citizens spends substantial resources in terms of time, effort and money annually to provide programs and support to its employees, including Vann, for them to use to obtain and build relationships with its clients.  Citizens' client list and client relationships are the lifeblood of its business and the expenditures incurred by Citizens in obtaining and maintaining its clients include the millions of dollars spent by Citizens every year on advertising and marketing, training employees, and the many other expenditures Citizens incurs in maintaining its goodwill in the industry.

18.     Citizens has also expended significant resources to service its clients, including to provide support staff, clearing services, operations personnel, systems and support, management and compliance supervision, salaries, annual registration fees, computer services and equipment, phone, mail, research, literature, seminars, trade and other professional publications, promotional events, securities research and analysis, and other services.  Citizens has borne the entire expense of these services and activities with no financial contribution from Vann.

19.     To protect itself from unfair competition, Citizens makes substantial efforts to ensure the confidentiality of information concerning its clients and strategies.  In addition to the contractual safeguards set forth in its agreements,[2] Citizens requires its employees to abide by employee policies and procedures that specifically treat client and proprietary information as Citizens' property and that prohibit the use or disclosure of this information other than in connection with Citizens' business.  Moreover, Citizens maintains policies safeguarding client and proprietary information to protect clients' privacy interests and keep this information strictly internal so that it does not fall into the hands of competitors.  These policies prohibit providing client and proprietary information to any third party or otherwise removing this information from Citizens.  Disclosure of Citizens' client and proprietary information to competitors would give those competitors an unfair advantage in soliciting Citizens' clients.

20.     Citizens exerts significant efforts to maintain the secrecy and confidentiality of its client records, including information identifying its clients.  Its Broomall and Havertown offices are locked and secure during non-working hours and a security firm monitors the building. The computer system is password-protected, and only authorized Citizens' personnel have access to account information.  The highly sensitive and confidential client information that Citizens is required to maintain is kept secure on the Citizens network.  Vann was undoubtedly aware of the steps taken by Citizens to protect its client and proprietary information.

21.     Citizens derives actual and potential economic value from its client and proprietary information in part because this information is not generally known to, and not ascertainable through proper means by, other persons who can obtain economic value from its disclosure or use. Citizens goes to great lengths and significant expense to maintain and grow its book of business,

---

[2] Those contractual safeguards are more fully discussed below.

establish client relationships and trust, and acquire/develop the confidential information it seeks to protect. These efforts include marketing, training its employees, conducting extensive research and due diligence, and providing services that best fit the needs of its clients, all of which take time and money to accomplish.

22. Citizens' customer and proprietary information is also protected by federal law and industry rules. For example, SEC Regulation S-P, 17 CFR § 248 *et seq.*, provides for specific conditions under which registered persons like Vann are permitted to disclose nonpublic personal information about clients. Generally, unless Vann sought and received approval for the specific disclosure from the client(s) at issue, such disclosure is prohibited.[3]

**B.      Vann's employment with Citizens.**

23. Vann's employment with Citizens commenced in September of 2021. Although Vann had prior industry experience before joining Citizens, she brought very few clients, if any, with her to Citizens.

24. Initially, Vann was a Virtual Wealth Client Consultant and then a Private Client Relationship Manager. In November of 2023, Vann became a Private Client Financial Advisor. In this role, Vann provided brokerage services and investment advice to Citizens' clients.

25. Vann spent the entirety of her Citizens career working in branch buildings of Citizens Bank, where many client referrals were handed to her. Citizens referred hundreds of bank clients to Vann in order for her to build Citizens' relationship with such clients. When Citizens determined that bank clients could benefit from additional investment advice, Citizens would refer

---

[3] Vann's employment agreement specifically references and binds her to these industry rules by requiring her to "strictly adhere to all applicable rules, regulations, and reporting requirements, including, but not limited to those of the Financial Industry Regulatory Authority or any successor entity thereto ("FINRA"), all applicable national and regional stock exchanges, the relevant regulatory authorities of the federal government and the state in which Employee is employed […]." Ex. 1-A, ¶ 12.

7

those clients to Vann and make the introduction. Vann then offered and provided access to investment opportunities through Citizens. Vann was not expected to engage in cold calling or to build a client base independent of these referrals.

26.     Vann built her book of business almost exclusively through such direct referrals. As a result, most, if not all, of the clients serviced by Vann on behalf of Citizens were not developed by Vann. Regardless of whether a client was referred to Vann by Citizens, Vann utilized Citizens' branch offices and resources with all of her clients.

27.     As part of her official duties at Citizens, Vann had access to extensive confidential financial records and information about Citizens' clients, including information about each client's investment, banking, and other financial services' needs. Such information, which is not publicly available and cannot be easily duplicated, is proprietary and valuable, and would be especially useful to a competitor.

28.     Vann's book included clients with managed investment accounts that paid management fees, and clients who did not have managed accounts who did not pay management fees. Mostly, these non-managed clients are invested exclusively in annuities or similar long-term products. In this industry it is typically more profitable, and easier, for a departing financial advisor to transfer managed accounts to a new firm than it is to transfer non-managed, annuities-based accounts. Without being directly involved in the servicing of Citizens' clients' accounts, there is no legitimate way for competitors or other industry participants to know whether clients have managed or non-managed accounts, what kind of fee rates they pay, or their investment preferences.

**C.     Vann's Agreements with Citizens.**

29.     At the commencement of her employment with Citizens, Vann entered into multiple enforceable agreements which dictated the terms of her employment and laid out post-

8

employment obligations which she is currently breaching. Among other agreements, Vann signed

the Financial Advisor Employment Agreement (the "Agreement") on or about November 2, 2023.[4]

30.    Through the Agreement, Vann agreed:

All memoranda, notes, records or other documents made, or compiled by Employee, or made available to Employee, during the term of this Agreement concerning the business of CSI or the Bank, or any account or portfolios of any of CSI's or the Bank's customers, are confidential business records and shall remain the property of CSI and the Bank, and shall be delivered by Employee to CSI upon the termination of Employee's employment or at any other time at CSI's request, and that none of such records, nor any part of them, is to be removed from the branch of Bank at which Employee is employed, either in original form or in duplicated or copied form, and that the names, addresses, and other facts in such records are not to be transmitted verbally except as necessary in the ordinary course of conducting business for CSI.

Employee may obtain or have access to certain proprietary, privileged or other confidential information of CSI and the Bank and their clients or customers, or prospective clients or customers, including those clients or customers Employee brings in (collectively referred to as "Confidential Information"). Confidential Information includes, but is not limited to, the identity of clients or customers or prospective clients or customers, business plans, strategies, products, services, programs, systems, databases, methods of operation, financial information, policies, procedures, or personnel information, of CSI or the Bank. Confidential Information also includes any non-public information disclosed by a client or customer, potential client or customer, or other third party which CSI or the Bank has agreed or is otherwise obligated to keep confidential, including, but not limited to, financial information concerning such individual or entity. Employee acknowledges and agrees that CSI and its parents, successors and/or affiliates have obligations to protect the confidentiality of this information and that those obligations extend to Employee. Employee acknowledges and agrees that such Confidential Information derives independent economic value, actual or potential, from not being generally known to, and not readily ascertainable by proper means by, competitors of CSI and its parents, successors and/or affiliates, that it is the subject of efforts that are reasonable under the circumstances to maintain its secrecy, and that it is therefore trade secret information under applicable law, including the Uniform Trade Secrets Act. Employee shall not in any way, commercial or otherwise, except to the extent required by the proper performance of Employee's duties pursuant to this Agreement, use or disclose to any

---

[4] The Agreement is attached to Exhibit 1 as **Exhibit 1-A**.

person, for any reason or at any time (whether during or after the term of this Agreement), any Confidential Information.

Employee shall not in any way, commercial or otherwise, except to the extent required by the proper performance of Employee's duties pursuant to this Agreement, use or disclose to any person, for any reason or at any time (whether during or after the term of this Agreement), any Confidential Information.

Ex. 1-A, ¶ 30.a.-c.

31.   Vann also signed a Code of Ethics as a condition of her employment in which she agreed to keep client information confidential.[5]

32.   Vann further agreed:

Except as otherwise required in connection with the performance of Employee's duties as contemplated herein, Employee agrees that, during the term of this Agreement and for a period of one (1) year thereafter, Employee will not, either directly or indirectly, for Employee's own account or as an agent, servant or employee, officer, director, shareholder, partner, member or manager of any entity, or member of any firm, or participant in any venture: […]

c. Solicit by mail, phone, personal meeting or in any other manner the retail securities brokerage, investment advisory or insurance business of any customer whose name became known to Employee as a direct or indirect result of Employee's employment with CSI and its parents, successors and/or affiliates.

Ex. 1-A, ¶ 31.c.

33.   Vann also agreed that the foregoing limitations are reasonable and properly required for the adequate protection of the business and trade secrets of Citizens.  Ex. 1-A, ¶ 32. Vann further agreed that if she violated any of the foregoing provisions, she would be liable to any losses caused thereby, and she agreed that such a breach could result in irreparable injury to Citizens for which monetary damages may be insufficient and that Citizens would be entitled to

---

[5] **Exhibits 1-B** and **1-C** are the Citizens Codes of Ethics that were in effect when Vann was employed by Citizens. Exhibits **1-D, 1-E, 1-F**, and **1-G** are certificates of completion for Vann's completion of Citizens' Business Conduct and Ethics Training.

enforce such provisions by obtaining an injunction or order for specific performance.  Ex. 1-A, ¶ 35.

34.    The Agreement is governed by and interpreted in accordance with the laws of the State of Rhode Island.  Ex. 1-A, ¶ 58.

35.    Vann's commitment to refrain from solicitation and to maintain the confidentiality of Citizens' client information is also set forth in other Citizens' policies and agreements.

**D.    Vann's pre- and post-resignation conduct.**

36.    Vann abruptly resigned from Citizens on Wednesday, June 10, 2026, by email and immediately joined Wells Fargo.[6]

37.    Since resigning, Vann has been actively soliciting clients and moving their business to Wells Fargo in violation of the Agreement.  Her communications with these clients have gone beyond merely announcing her new affiliation with Wells Fargo. Indeed, Citizens has heard from at least three of Vann's former clients that she has requested they transfer their accounts to her at Wells Fargo.

38.    Three clients were so upset they signed sworn declarations detailing Vann's solicitation attempt.[7]

39.    As indicated above, Citizens gave Vann the substantial majority, if not all, of the client relationships she was servicing at the time of her resignation.  These clients assigned to Vann were pre-existing Citizens' clients or were long-term clients of Citizens banking affiliates who were referred to Vann or were developed by Citizens at the time they were assigned to Vann.

40.    Vann's solicitation of Citizens' clients is ongoing and continuing.

---

[6] A copy of Vann's resignation letter is attached hereto as **Exhibit 1-H**.
[7] *See* **Exhibits 1-I**, **1-J**, and **1-K**.

41.     Without misappropriating Citizens' confidential client information, Vann would not have been able to engage in such a widespread and directed targeting of the clients she formerly serviced so quickly after her resignation.  Vann would have no way to identify Citizens' clients, their contact information, or their account types with such speed without referring to or using Citizens' confidential client information. Vann has been focusing her solicitation efforts on clients who have managed accounts and accordingly produce greater revenue through management fees. Without referring to confidential client information, Vann would have no way to determine which Citizens' clients to target in this manner.

42.     As of her resignation, Vann was the Citizens advisor for 222 households and 717 accounts totaling around $70 million in assets. These accounts generated $422,000 in revenue over the prior twelve months. 46% of these accounts are managed and generate fees. In addition to lost revenue, these relationships represent incalculable future harm to Citizens in the form of lost goodwill and lost sources of potential referrals. Vann's ongoing actions and disregard for her obligations to Citizens threaten the $70 million in assets, Citizens' client relationships, and the confidentiality of Citizens' proprietary, trade secret, and sensitive client information.

43.     Citizens derives actual and potential economic value from its confidential customer account and financial information because this information is not generally known to and not readily ascertainable through proper means by other persons who can obtain economic value from their disclosure or use.

44.     By absconding with Citizens' confidential customer account and financial information, Vann is endangering Citizens' sustainability as an institution that safeguards its clients' confidential financial information. In addition, by retaining this proprietary information, Vann has given herself an unfair, improper, and anti-competitive advantage when communicating

with clients and conducting business at Wells Fargo. This irreparable injury to Citizens cannot be fully redressed by monetary damages. Accordingly, Vann must be enjoined from using this highly confidential and sensitive information and ordered to return this information to Citizens immediately.

45.    By improperly soliciting Citizens' clients, Vann has caused and will continue to cause continuing and irreparable injury to Citizens which cannot be cured by monetary damages alone.  Among other things, her wrongdoing has caused and will continue to cause irreparable harm through (i) loss of clients and client confidence; (ii) injury to Citizens' reputation and goodwill; (iii) use and disclosure of Citizens' confidential and proprietary information, including client lists, contact information, and account type; (iv) damage to office morale and stability, and the undermining of office protocols and procedures; and (v) present economic loss, which is unascertainable at this time, and future economic loss, which is now incalculable.

46.    It is critical that this Court grant injunctive relief stopping Vann from retaining and misusing Citizens' confidential information and improperly diverting business from Citizens.  If clients are diverted away through the use of Citizens' confidential information, Citizens will lose those relationships for years into the future.  The damages that flow from such an occurrence are huge and extremely difficult to quantify.  So too is the negative impact and loss of goodwill, referral sources, confidentiality of client information, and office stability should Vann remain unchecked.

## V.    CAUSES OF ACTION

### A.    COUNT I – Breach of Contract

47.    Citizens repeats and re-alleges the allegations contained in Paragraph Nos. 1 through 46 as if set forth fully herein.

13

48.     Citizens has performed all material obligations under the Agreement, Ex. 1-A, a valid and enforceable contract.

49.     Vann breached the Agreement by, among other things, removing and using Citizens' confidential information, and soliciting Citizens' clients to move to Wells Fargo.  Among other things, Vann: (i)  is using Citizens' confidential information to move clients to Wells Fargo; (ii) is soliciting business of customers whose names became known to her as a result of her employment with Citizens; and (iii) is using confidential client financial and account  information to target and solicit Citizens' clients.

50.     Vann's breaches of the Agreement have damaged Citizens in the form of lost revenue and business, loss of customer goodwill, and loss of confidentiality of client records, among other things.  Such harm is ongoing, and Vann's breaches threaten further irreparable harm should injunctive relief not issue.

**B.     COUNT II – Misappropriation of Trade Secrets in violation of the Defend Trade Secrets Act – 18 U.S.C. § 1836 *et seq***

51.     Citizens repeats and re-alleges the allegations contained in Paragraph Nos. 1 through 46 as if set forth fully herein.

52.     Vann had full access to Citizens' client lists, client contact and financial information, proprietary investment strategies, and other confidential and/or proprietary information, all of which constitute trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*.  Specifically, Vann had access to trade secret information maintained by Citizens regarding (i) its clients' identities and contact information; (ii) its clients' financial information and investing needs; and (iii) its clients' account information, account types and composition, and fee rates.  Because Citizens services client accounts in several states and invests its clients' money

14

in products in interstate commerce, these trade secrets are related to products and services used in and intended for use in interstate commerce.

53.　Under the DTSA, trade secrets include all forms and types of financial information, business, technical, and economic information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorized physically, electronically, graphically, photographically, or in writing. 18 U.S.C. § 1839(3). Citizens' client lists, client contact and financial information, proprietary investment strategies, and other confidential and/or proprietary information fall squarely within the DTSA's definition of a trade secret.

54.　Citizens' trade secrets and confidential and/or proprietary information derive independent economic value, actual and potential, from not being generally known to and/or readily ascertainable through proper means by other persons who could obtain economic value from the disclosure or use of such information. Citizens expends significant resources to obtain and protect these trade secrets, and Citizens is entitled to rely upon its ability to protect those trade secrets from disclosure to or use by a competitor. Furthermore, Citizens is the entity in which rightful legal or equitable title to, or license in, the trade secrets are reposed.

55.　In fact, Citizens took active steps, which were reasonable under the circumstances, to maintain the secrecy of this confidential, proprietary, and/or trade secret information. Generally, to protect itself from unfair competition, Citizens makes substantial efforts to ensure the confidentiality of information concerning its clients and strategies. In addition to the contractual safeguards set forth in the Agreement, Citizens implements policies and the other security measures described above.

56.     Vann has willfully and maliciously misappropriated, disclosed, used, and continues to use these trade secrets and confidential and/or proprietary information to assist her in furthering the business interests of Wells Fargo, which is in direct competition with Citizens.  Immediately upon her resignation, Vann solicited clients with managed accounts to transfer their business away from Citizens.  Vann could not have targeted these clients without absconding with Citizens' confidential and proprietary information.  Vann took such trade secrets and confidential and/or proprietary information without authorization, and without a right or privilege to do so, and by improper means, including breaches of her contractual duties and duties of loyalty and confidentiality. Vann knew or should have known the information was confidential and protected as a trade secret, and acquired by improper means; but, instead, received and used the information intentionally or with reckless disregard.

57.     Vann has disclosed and/or used Citizens' trade secrets without express or implied consent. She used improper means to acquire Citizens' trade secrets, including breach and inducement of breach of duties to maintain secrecy of the trade secrets.  Furthermore, at the time of disclosure and/or use of Citizens' trade secrets, Vann knew or had reason to know that the trade secrets were (i) derived from or through persons who had used improper means to acquire the trade secrets; (ii) acquired under circumstances giving rise to a duty to maintain the secrecy or limit the use of the trade secrets; and (iii) derived from or through persons who owed duties to Citizens to maintain the secrecy of the trade secrets or limit the use of the trade secrets.

58.     Thus, Vann has converted and wrongfully appropriated for her own use Citizens' trade secrets and confidential and/or proprietary information, including its client lists and client contact and financial information, in violation of the Defend Trade Secrets Act.  *See* 18 U.S.C. § 1836 *et seq*.

59.     Vann's misappropriation and use of Citizens' trade secrets and confidential and/or proprietary information as described herein was intentional, willful, and/or carried out with malice and an intent to injure Citizens and its businesses, and has directly and proximately caused, and will continue to cause, Citizens to suffer damages and other irreparable harm.

**C.     COUNT III – Misappropriation of Trade Secrets in violation of the Pennsylvania Uniform Trade Secrets Act – 12 Pa. C.S. §§ 5301-5308**

60.     Citizens repeats and re-alleges the allegations contained in Paragraph Nos. 1 through 46  as if set forth fully herein.

61.     Citizens' confidential and proprietary business and client information derives substantial, independent economic value from not being generally known to the public or to Citizens' competitors, who could obtain economic value from the information.  Citizens expended significant financial and human resources to develop this information, which cannot be easily acquired or replicated by others, from among the literally millions of actual or potential individual investors in the marketplace.  Further, Citizens has taken substantial efforts to maintain the secrecy of its confidential and proprietary business and customer information, including, but not limited to, restricting access to such information, designating such information as confidential, and requiring confidentiality agreements.  Accordingly, Citizens' confidential and proprietary business and customer information, including its client lists and client contact and financial information, constitutes trade secrets pursuant to the Pennsylvania Uniform Trade Secrets Act.

62.     Vann misappropriated Citizens' trade secrets and confidential information, including client contact and account information, and utilized the information to contact and solicit Citizens' clients to transfer their assets and business to her at Wells Fargo.  Specifically, Vann has misappropriated, removed and/or disclosed, and/or is using, trade secret information regarding Citizens' clients, including their identities, contact information, and account type.  Vann has

engaged in such activities without the express or implied consent of Citizens and, indeed, in violation of its agreements and policies prohibiting such conduct. Vann engaged in this conduct despite the fact that she knew or had reason to know that her knowledge of Citizens' trade secrets and confidential information was acquired under circumstances giving rise to a duty to maintain its secrecy and to limit its use.

63.    As a direct and proximate result of Vann's misappropriation of Citizens' trade secrets, Citizens has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated.  Accordingly, Citizens is entitled to a temporary restraining order and a preliminary injunction.

**D.    COUNT IV – Unfair Competition**

64.    Citizens repeats and re-alleges the allegations contained in Paragraph Nos. 1 through 46 as if set forth fully herein.

65.    Vann has been and is continuing to engage in unfair competition with Citizens, through misappropriation of trade secrets, misappropriation of confidential customer information, and breach of common law and contractual duties.  In so doing, Vann has jeopardized Citizens' business by unfair methods.

66.    As a result of these unfair methods, Citizens has suffered, continues to suffer, and will suffer damages and irreparable harm.

**E.    COUNT V – Tortious Interference with Business Relationships and Prospective Contractual Relations**

67.    Citizens repeats and re-alleges the allegations contained in Paragraph Nos. 1 through 46 as if set forth fully herein.

68.    Citizens maintains business relationships and/or expectancies with its clients, including those formerly serviced by Vann, sources of referral business, and other third parties.

18

Citizens has a reasonable expectation of continuing these contractual business relationships with third parties and entering into new contractual business relationships. Vann has knowledge of these relationships; in fact, she was tasked with developing and maintaining many of these relationships. When she breached her contractual and common law duties to Citizens, Vann was acting intentionally and without justification to interfere with Citizens' prospective contractual relationships. Vann's interference prevented Citizens' legitimate contractual expectancies from continuing and/or ripening into valid contractual relationships.

69. Vann's conduct could cause clients to disrupt or terminate their contractual relationships and/or expectancies with Citizens. As a result of Vann's actions, Citizens has suffered, continues to suffer, and will suffer damages and irreparable harm.

**F. COUNT VI – Conversion**

70. Citizens repeats and re-alleges the allegations contained in Paragraph Nos. 1 through 46 as if set forth fully herein.

71. Vann has removed and is using Citizens' trade secrets and confidential information. Citizens has ownership rights and the right to possess these trade secrets and confidential information. Vann converted the same by wrongful acts, including breaches of common law, contractual, regulatory, and statutory obligations.

72. As a result of the conversion of this confidential, proprietary, and trade secret information, Citizens has suffered, continues to suffer, and will suffer damages and irreparable harm.

**G. COUNT VII – Breach of Fiduciary Duties**

73. Citizens repeats and re-alleges the allegations contained in Paragraph Nos. 1 through 46 as if set forth fully herein.

74. By virtue of her position with Citizens, Vann owed fiduciary duties to Citizens,

19

including a duty of undivided loyalty during the term of her employment with Citizens.  Vann's duty of loyalty prohibited her from competing with Citizens or assisting a competing business during the course of her employment with Citizens. Vann's fiduciary duties, including the duty of loyalty also included a duty to act toward Citizens fairly, honestly and in good faith, to maintain the confidentiality of Citizens' trade secrets and other confidential and proprietary business and client information, and to refrain from any act or omission calculated or likely to injure Citizens.

75.     As a result of Vann's breach of fiduciary duties, Citizens has suffered, continues to suffer, and will suffer damages and irreparable harm.

76.     Accordingly, Citizens is entitled to a temporary restraining order and a preliminary injunction.

## VI.     ATTORNEYS' FEES

77.     Citizens is entitled to recover attorneys' fees and costs pursuant to the Agreement. ¶ 34 of the Agreement states, "…Employee agrees to indemnify CSI and its parents, successors and/or affiliates for any and all losses, expenses, damages, costs, claims or liabilities, including, but not limited to, all reasonable legal fees and disbursements (collectively, "Losses") resulting from Employee's violation of Sections VII and/or VIII, including but not limited to actions involving any third parties or administrative proceedings."

## VII.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

i.     Enter a temporary restraining order and preliminary injunction against Vann providing that:

a.     Vann is enjoined and restrained, directly or indirectly, and whether alone or in concert with others, including but not limited to Wells Fargo, from:

i.     Soliciting by mail, phone, personal meeting or any other manner the retail securities brokerage, investment advisory or insurance business of any customer whose name became known to Vann as a

direct or indirect result of her employment as a Financial Consultant; and

    ii. Directly or indirectly, divulging, disclosing, or communicating any trade secrets or confidential or proprietary information learned by Vann in connection with her employment as a Financial Consultant. Trade secrets shall mean any information which is not generally known or publicly available outside of Citizens concerning any matters relating to the affairs or business of Citizens, including, without limiting the generality of the foregoing, information concerning Citizens customers' accounts or portfolios, or any other information concerning the business of Citizens including but not limited to, their manner of operation, their business plans and/or strategies or other data.

    b. Vann, and all those acting in concert with her, are required to return to Citizens or its counsel all records, documents and/or information in whatever form pertaining to Citizens' clients, employees and business within 24 hours of notice to Vann or her counsel of the terms of such an order.

ii. Such other and further relief as the Court deems just and proper.

Dated this 18th day of June, 2026.

Respectfully submitted,

**MONTGOMERY MCCRACKEN WALKER & RHOADS LLP**

By: /s/*Edward J. Heffernan*
      Edward J. Heffernan
      Bar No. 204000
      1735 Market Street
      Philadelphia, Pennsylvania 19103
      Phone: 215-772-7353
      Fax: 215-772-7620
      Email: eheffernan@mmwr.com

**-AND-**

**HENNEMAN RAU & KIRKLIN LLP**

By: /s/ *Matthew B. Henneman*
      Matthew B. Henneman
      Texas State Bar No. 00790865

21

Federal ID No. 21661
*Application for Pro Hac Vice Admission
Forthcoming*
Erin Friel Elmore
Texas State Bar No. 24027258
Federal ID No. 430907
*Application for Pro Hac Vice Admission
Forthcoming*
815 Walker Street, Suite 1440
Houston, Texas 77002
Phone: 713-955-6030
Fax: 713-955-6141
Email: mhenneman@hrklaw.com
Email: efelmore@hrklaw.com

**ATTORNEYS FOR PLAINTIFF
CITIZENS SECURITIES, INC.**